UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

SHELBYVILLE HOSPITAL              )
CORPORATION d/b/a HERITAGE        )
MEDICAL CENTER,                   )
                                  )
          Plaintiff,              )
v.                                )          No. 4:13-cv-088
                                  )          Phillips/Carter
E. WAYNE MOSLEY, M.D.,            )
                                  )
          Defendant.              )

## MEMORANDUM OPINION

Plaintiff/Counter-Defendant Shelbyville Hospital Corporation d/b/a Heritage Medical Center (the "Hospital") has moved to dismiss [Doc. 32] the amended counterclaim of defendant/counter-plaintiff E. Wayne Mosley, M.D. ("Dr. Mosley"). Dr. Mosley has responded in opposition to the motion [Doc. 34] and the Hospital has filed a reply [Doc. 35]. Accordingly, this matter is ripe for determination.

I.     **Relevant Facts**[1]

The Hospital is a for-profit Tennessee corporation that operates the local hospital in Shelbyville, Tennessee, and recruits doctors to practice in the area [Doc. 31 at ¶ 2]. The Hospital is wholly owned by Community Health Investment Co., LLC [*Id.*]. Community Health Investment Co., LLC, also wholly owns the Shelbyville Clinic

---

[1]For the purposes of a motion to dismiss, the Court takes the factual allegations in the amended counterclaim [Doc. 31] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

Corporation (the "Clinic"), which operated an orthopedic clinic prior to Dr. Mosley's arrival in Shelbyville and rented office space to Dr. Mosley [*Id.*]. Dr. Mosley is an orthopedic surgeon and a resident of Gulf Breeze, Florida [*Id.* at ¶ 1].

In April 2011, Dr. Mosley was approached by representatives of the Hospital to relocate his orthopedic practice to Shelbyville, Tennessee [*Id.* at ¶ 4]. In June 2011 during the course of negotiations, the Hospital disclosed what was purported to be financial information for the first six months of practice of the previous orthopedic surgeon [*Id.*]. Dr. Mosley contends that these figures were inaccurate or inflated and that he relied upon them in agreeing to relocate his practice [*Id.* at ¶¶ 21—22]. The Hospital also represented to Dr. Mosley that x-ray services and facilities would be available for his practice from a company controlled by the Hospital and that it would assist Dr. Mosley in establishing his orthopedic medical practice [*Id.* at ¶ 5]. Dr. Mosley agreed to relocate his orthopedic practice to Shelbyville and the parties entered into a Recruitment Agreement on or about July 27, 2011[2] [*Id.* at ¶ 8]. In conjunction with the Recruitment Agreement, Dr. Mosley contends that he was forced to lease office space for his orthopedic practice from the Clinic [*Id.* at ¶ 9].

---

[2]The parties dispute which document is the operative Recruitment Agreement. The Hospital claims that the document attached as Exhibit A to the Complaint [Doc. 1-1] is the controlling Recruitment Agreement, while Dr. Mosley contends that the document attached as Exhibit 1 to his Answer [Doc. 10-1] is the controlling agreement. However, solely for purposes of the instant motion, the Hospital agrees to refer to the document attached to Dr. Mosley's answer as the Recruitment Agreement.

Although not explained in the Counterclaim, the Recruitment Agreement[3] reveals that the parties agreed that Dr. Mosley would engage in the full-time practice of medicine in Shelbyville for 36 months [Doc. 10-1, § B.1]. During the first 18 months (the "Cash Collections Guarantee Period"), the Hospital guaranteed that his practice would generate cash collections of at least $84,416.66 per month ("Monthly Cash Collections Guarantee Amount") [*Id* § C.1]. If his cash collections in a given month were less than $84,416.66, then the Hospital would loan Dr. Mosley the difference between $84,4166.66 and his actual collections [*Id*. § D.2]. The Hospital agreed to loan Dr. Mosley up to $1,013,000.00 ("Total Cash Collections Guarantee Amount") [*Id*.]. At the end of the first 18 month period, the Hospital agreed to forgive 1/18th of the amount loaned to Dr. Mosley for every month that he continued to engage in the full-time practice of medicine in Shelbyville [*Id*. § D.7]. If Dr. Mosley fulfilled his total 36 month commitment, the Hospital would forgive all of his debt [*Id*. § D.8].

When he started his clinic on August 15, 2011, Dr. Mosley had a full day of patients scheduled by the Hospital and whose treatment had already been billed by the Clinic. Thus, Dr. Mosley could not bill for the treatment he provided to these patients

---

[3]The Court notes that because a motion to dismiss pursuant to Rule 12(b)(6) tests the "sufficiency of the [counter-] plaintiff's claim for relief," the Court "may consider only matters properly part of the complaint or pleadings" in deciding the merits of the motion. *Armengau v. Cline,* 7 F. App'x 336, 344 (6th Cir. 2001) (citations omitted). *See also* Fed. R. Civ. P. 12(d). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Sixth Circuit "takes a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Armengau,* 7 F. App'x at 344. The Recruitment Agreement relied upon by Dr. Mosley is attached to and referenced in his answer [Doc. 10] to the complaint. Moreover, the Recruitment Agreement is central to both the complaint and the counterclaim. Thus, it may properly be considered in reviewing the Hospital's motion to dismiss.

[Doc. 31 at ¶ 11]. From August 15, 2011, through February 28, 2013, the Hospital interfered with Dr. Mosley's ability to operate his orthopedic practice by placing employees in his leased space, collecting payments from his patients for Hospital services, registering Hospital patients for diagnostic procedures through his office, and entering his office space without permission [*Id*. at ¶ 12]. Hospital agents also failed to remove or replace inadequate signage which referenced the former orthopedic practice, "Shelbyville Orthopaedics and Sports Medicine," rather than Dr. Mosley's practice, and this confused his patients who could not find his office for their appointments [*Id*. at ¶¶ 12, 23]. Hospital agents also removed necessary equipment from Dr. Mosley's office, including an ice maker and a copy machine, which disrupted his ability to operate and develop his practice [*Id*. at ¶ 12]. Hospital agents or employees conducted Hospital business out of his office, including the operation of a competing orthopedic practice [*Id*. at ¶ 13].

After a rental dispute arose between Dr. Mosley and the Clinic, the Hospital closed its imaging/diagnostic services next door to Dr. Mosley's office with only a few days' notice [*Id*. at ¶ 14]. Dr. Mosley contends that the Hospital and the Clinic made joint representations to him that x-ray services and facilities would be available for his practice from a company they controlled [*Id*. at ¶ 20]. The closure of these services hindered his ability to successfully operate his orthopedic clinic and treat patients in a timely and efficient manner [*Id*.]. Dr. Mosley contends that this closure was in response to his position in favor of an orthopedic surgical suite which was opposed by the Hospital at a Certificate of Need hearing, as well as Dr. Mosley's witness statement regarding a

4

Department of Labor complaint against the Hospital and/or the Clinic [*Id*. at ¶ 14]. Finally, Hospital agents Dan Buckner, Tisha Rader, and/or Jon Baker further interfered with Dr. Mosley's ability to operate his practice by improperly removing him from his leased office space [*Id*. at ¶ 15].

The Hospital has sued Dr. Mosley for breach of contract and seeks to recover all guarantee payments made to him [Doc. 1]. Dr. Mosley has countersued and, in Count 1, claims that the Hospital has breached the Recruitment Agreement [*Id*. at ¶¶ 16—26]. In Count 2, Dr. Mosley claims that the Hospital intentionally interfered with his business relationships with patients [*Id*. at ¶¶ 27—32]. In Count 3, Dr. Mosley claims fraud in the inducement of the contract based on the inaccurate, inflated, and/or false misrepresentations of the anticipated income from the prior orthopedic clinic [*Id*. at ¶¶ 33—38]. In Count 4, Dr. Mosley claims reckless or negligent misrepresentation through the false information the Hospital provided regarding the previous orthopedic surgeon's billing for the first six months of his practice and regarding Dr. Mosley's access to x-rays and imaging services [*Id*. at ¶¶ 39—41]. Finally, in Count 5, Dr. Mosley claims quantum meruit/unjust enrichment because he was forced to treat patients of the Hospital's "alter ego," the Clinic, which had already billed for services not yet rendered [*Id*. at ¶¶ 42—49].

## II.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

5

[opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

## III.    Dr. Mosley's Breach of Contract Claim (Count 1)

The Hospital argues that Dr. Mosley has failed to state a claim for breach of contract because recitals are not binding obligations, because the purported obligations he claims were breached do not appear in the Recruitment Agreement, and because breach

of the implied covenant of good faith and fair dealing is not an independent basis for relief [Doc. 33 at pp. 5—9].

In response, Dr. Mosley points to the following recitals in the Recruitment Agreement:

> WHEREAS, Hospital seeks to enhance the quantity and quality of physician skills in Physician's Specialty in the Community; and
>
> WHEREAS, Hospital has determined that there is an objective and defined need for additional physicians practicing Physician's Specialty in the Community; and . . .
>
> WHEREAS, Hospital desires to induce Physician to relocate Physician's medical practice to the Community in order to become a member of the Hospital's medical staff;
>
> WHEREAS, Hospital desires to assist Physician in establishing Physician's practice in the Community; . . ..

[Doc. 10-1 at p. 3.] Dr. Mosley contends these recitals demonstrate the purpose of the Recruitment Agreement and the intent of the parties, that is, "to provide Dr. Mosley with financial safeguards in developing his practice and provide the Shelbyville community with access to an orthopedic surgeon in the area" [Doc. 34 at p. 6]. Dr. Mosley argues that the implied duty of good faith and fair dealing permits courts interpreting the contract to read into the contract reasonable terms to further or accomplish the purpose of the contract. Dr. Mosley contends that the Hospital's actions breached the Recruitment Agreement by failing to provide him with reasonable medical practice establishment assistance and failing to treat him fairly in accordance with the purposes of the contract [*Id*. at p. 7]. Dr. Mosley also suggests that the Recruitment Agreement must be read in conjunction with his contract with the Clinic for office space and the purchase of

7

equipment and supplies [*Id.* at p. 10].  Finally, Dr. Mosley argues that the Hospital has breached Section C.2 of the Recruitment Agreement by disrupting his ability to operate and develop his practice and therefore failing to provide him with medical practice establishment assistance as agreed [*Id.* at pp. 10—11].

In reply [Doc. 35], the Hospital argues that a breach of the "purpose" of the Recruitment Agreement as evidenced by the recitals is not a breach of any actual term of the agreement.  Instead, the terms of the Recruitment Agreement define the "funds" and the "financial safeguards" that the Hospital was required to provide and Dr. Mosley has not alleged that the Hospital has failed to provide any funds or financial safeguards [*Id.* at p. 4].  Further, the Hospital points out that it was not required to provide a sign, x-ray facilities adjacent to Dr. Mosley's office, an ice machine, or a copier; therefore, the Hospital could not have breached the Recruitment Agreement by failing to provide such items.  The Hospital also notes that any agreement regarding leased equipment was between Dr. Mosley and the Clinic and cannot be a basis for a claim against the Hospital [*Id.* at p. 5].  The Hospital argues that Dr. Mosley cannot use the implied covenant of good faith and fair dealing to impose new contractual obligations [*Id.* at pp. 5—6].

The Hospital is correct that precatory recitals in a contract do not create binding obligations, a point that Dr. Mosley does not directly challenge.  *Clark v. BP Oil Co.*, 137 F.3d 386, 391 (6th Cir. 1998); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 699 (8th Cir. 2003) (precatory contract language describing the purpose of the Small Business Administration is not mandatory and gives rise to no specific contractual duty).  The above-referenced recitals are just that, introductory language expressing a desire for

action in a nonbinding way. *See Black's Law Dictionary* (9th ed. 2009) (defining precatory). The very language of the recitals – "Hospital *desires* . . ." – indicates an expression of what the parties hope to achieve rather than what they have expressly covenanted to do or not do. Dr. Mosley cannot base a breach of contract claim on the Hospital's failure to live up to the aspirational language of the recitals.

The Hospital is also correct that the implied duty of good faith and fair dealing does not supply additional terms of the contract on which the parties have not agreed. *See Lawhorn & Assoc., Inc. v. Patriot Gen. Ins. Co.*, 917 F. Supp. 538, 543 (E.D. Tenn. 1996) (citing *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995)). While this duty is implied in every contract, a breach of such a duty requires the violation of a specific contractual provision. *Id. See Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at *11 (W.D. Tenn. July 2, 2013) ("absent a valid claim for breach of contract, there is no cause of action for breach of implied covenant of good faith and fair dealing") (quoting *Envoy Corp. v. Quintiles Transnat'l Corp.*, No. 3:03cv0539, 2007 WL 217 3365, at *8 (M.D. Tenn. July 26, 2007)). Dr. Mosley argues that the implied duty of good faith and fair dealing permits the Court to "read into the contract reasonable terms to further or accomplish the purpose of the contract" [Doc. 34 at p. 8], but this is precisely what is *not* permitted. The implied duty of good faith and fair dealing "does not 'create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement.'" *Pugh*, 2013 WL 3349649, at *11 (quoting *Goot v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2003-COA-R3-CV, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005)).

9

The only specific contract provision which Dr. Mosley claims was violated by the Hospital is Section C.2 [Doc. 34 at p. 10]. Section C.2 of the Recruitment Agreement states as follows:

> Practice Establishment. Hospital shall provide reasonable medical practice establishment assistance if requested by Physician to help ensure an expeditious and efficient practice start-up. At any time during the Cash Collections Guarantee Period, the Hospital may direct that the Hospital's Physician Practice Support Team, which is a team of individuals with experience in physician practice management, assist the Physician with additional practice management and/or marketing education sessions at no cost to Physician.

[Doc. 10-1 at p. 10.] While this provision contains an obligation by the Hospital to "provide reasonable medical practice establishment assistance *if requested*" (emphasis added), the Recruitment Agreement does not define the parameters of "reasonable medical practice establishment assistance." It seems reasonable to interpret the term as including, but perhaps not limited to, "additional practice management and/or marketing education sessions." However, there is no allegation that the Hospital failed to provide any requested practice management or marketing education sessions.

As the Hospital correctly points out, neither section C.2 nor any other provision in the Recruitment Agreement requires the Hospital to provide x-ray services next door to Dr. Mosley's office, a sign, an ice machine, or a copier. Conceding that the Recruitment Agreement did not obligate the Hospital to provide him with these items, Dr. Mosley argues that the removal of these items "interfered with [his] ability to develop a successful medical practice" and therefore the Hospital failed to provide him with reasonable medical practice establishment assistance and "hindered his ability to establish

his practice" [Doc. 34 at pp. 7, 11]. Even assuming the Hospital did as Dr. Mosley has alleged, this circular reasoning does not establish a violation of a specific contractual provision or a breach of the implied duty of good faith and fair dealing.

Lastly, Dr. Mosley contends that "all agreements and contracts should be read together," meaning the parties' Recruitment Agreement and the contract between Dr. Mosley and the Clinic for office space and the purchase of equipment and supplies [Doc. 34 at p. 10]. However, there is nothing in the Recruitment Agreement which references an agreement with the Clinic, which indicates that the Recruitment Agreement should be read in conjunction with another agreement, or that the Recruitment Agreement does not define all the terms of the parties' agreements. In fact, the Recruitment Agreement specifies that it "constitutes the entire agreement between the Parties with respect to the subject matter hereof" [Doc. 10-1, § E.3]. This integration clause clearly reflects an intent that the agreement would encompass the parties' total agreement. *See Tipton v. Quinn*, No. M1998-00951-COA-R3-CV, 2001 WL 329530, at *5 (Tenn. Ct. App. Mar. 28, 2001); *Brookside Mills, Inc. v. Specialty Retail Concepts, Inc.*, 1987 WL 26206, at *4 (Tenn. Ct. App. Dec. 8, 1987) ("This [integration] clause is not meaningless. By signing this contract both parties agreed that the written lease would set forth their final agreement."). Further, any agreement between Dr. Mosley and the Clinic would not be binding on the Hospital.

Accordingly, for all of these reasons, the Court finds that Dr. Mosley has failed to state a plausible claim for breach of contract and this claim must be dismissed.

## IV. Dr. Mosley's Claim for Intentional Interference With a Business Relationship (Count 2)

The Hospital argues that Dr. Mosley has failed to state a claim for intentional interference with a business relationship because he has failed to allege any qualifying business relationships, because he has failed to allege that the Hospital used "improper means," and because he has failed to allege causation [Doc. 33 at pp. 10—14].

In response [Doc. 34], Dr. Mosley contends that he has sufficiently pled all the elements of a claim for intentional interference with a business relationship. Dr. Mosley asserts that the element of a qualifying business relationship is satisfied by his current orthopedic patients who require surgery or casting and then follow up treatment until their injuries have healed [*Id*. at pp. 12—13]. Dr. Mosley argues that the Hospital improperly interfered with his ability to operate his clinic by closing an x-ray facility, not providing adequate signage, placing an orthopedic surgeon in his office space, and removing necessary equipment from his office [*Id*. at p. 15].

The Hospital replies that Dr. Mosley has confused the standard for interference with existing business relationships with the standard for interference with prospective relationships [Doc. 35 at p. 7]. In order state a claim for interference with existing business relationships, Dr. Mosley must name specific third parties, rather than a general category of persons, such as "patients." The Hospital contends that acting to protect its own interests is not an improper motive as Dr. Mosley suggests, nor do any of his allegations of "interference" rise to the level of conduct required for "improper means"

[*Id.* at pp. 9—10]. Finally, the Hospital argues that Dr. Mosley cannot recover damages for services rendered to the Clinic's patients under any theory of interference.

The tort of intentional interference with business relationships requires proof of the following elements: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002); *Seaton v. TripAdvisor, LLC*, 728 F.3d 592, 602 (6th Cir. 2013) (citing *Trau-Med*).

Even assuming that Dr. Mosley has sufficiently identified a business relationship with specific third parties or an identifiable class of third parties, the Court finds that his claim for intentional interference with a business relationship fails to sufficiently allege an improper motive or improper means by the Hospital. Proof of an "improper motive" requires proof that the defendant's predominant purpose was to injure the plaintiff. *Trau-Med of Am.*, 71 S.W.3d at 701 n.5. Further, improper interference includes "those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, . . . violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, . . . and those

methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition." *Id*.

The amended counterclaim alleges that the Hospital interfered with Dr. Mosley's relationship with patients and prospective patients by allowing Dr. Richard Slusher, a competing orthopedic surgeon, in Dr. Mosley's office space, closing its x-ray or imaging/diagnostic department adjacent to Dr. Mosley's office space, forcing Dr. Mosley to vacate his office space, and failing to correct or replace signage to Dr. Mosley's office [Doc. 31 at ¶¶ 29—31]. Although the amended counterclaim asserts that the Hospital "intended to interfere" with his practice [*id*. at ¶ 29], this does not equal evidence of a predominant purpose to injure Dr. Mosley. Further, none of the actions alleged rise to the level of improper means as defined by *Trau-Med*. The alleged acts by the Hospital are not illegal or independently tortious. There are no allegations of violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, or otherwise unethical conduct, such as sharp dealing, overreaching, or unfair competition. Thus, even assuming the allegations are true, Dr. Mosley has not plausibly alleged facts to show that the Hospital acted with an improper motive or improper means.

Because Dr. Mosley has failed to plausibly allege all of the essential elements of a claim of intentional interference with a business relationship, this claim must be dismissed.

## V.     Dr. Mosley's Claims for Fraud in the Inducement (Count 3) and Negligent Misrepresentation (Count 4)

The Hospital argues that Dr. Mosley cannot state a claim for fraud in the inducement or negligent misrepresentation because the parol evidence rule bars any attempt to negate or contradict the terms of the Recruitment Agreement and because he cannot claim damages suffered in treating the Clinic's patients as those damages are unrelated to the alleged misrepresentation [Doc. 33 at pp. 14—18].

Dr. Mosley alleges that the Hospital supplied false information regarding the profitability of the previous orthopedic practice and this induced him to enter into the Recruitment Agreement and relocate his practice to Shelbyville.  He incurred expenses in opening a new practice and was forced to treat patients for whom he could not bill, and this caused him to run through his Total Cash Collections Guarantee Amount more quickly.  Dr. Mosley claims that he would not have relocated his practice or he would have negotiated different terms in the Recruitment Agreement had he been provided accurate information.  Dr. Mosley contends that the parol evidence rule is inapplicable because he not seeking to contradict the financial terms of the Recruitment Agreement, but rather alleges that the Hospital's misrepresentations regarding billings and x-ray services induced him to enter into the Recruitment Agreement [Doc. 34 at pp. 16—22].

In reply, the Hospital points out that the Recruitment Agreement specifies the monthly guaranteed payments that Dr. Mosley would receive and he cannot claim that another representation about income induced him to sign the agreement.  The Hospital also argues that Dr. Mosley cannot recover damages *from the Hospital* for services

rendered *to the Clinic's patients* without compensation.  Finally, the Hospital argues that

Dr. Mosley cannot state a claim for reckless or negligent misrepresentation based on the

future availability of x-ray services as that is not an existing past or present fact [Doc. 35

at pp. 11—13].

A fraudulent inducement claim requires proof that the defendant (1) made a false

statement concerning a fact material to the transaction (2) with knowledge of the

statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance

on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted

from this reliance.  *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011); *Lamb v.

MegaFlight, Inc.*, 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000).  Claims for fraudulent

inducement may involve false statements of past or present facts or false promises made

without the present intent to perform.  *Lowe v. Gulf Coast Dev., Inc.*, 01-A-

019010CH00374, 1991 WL 220576, at *7 (Tenn. Ct. App. Nov. 1, 1991).

Negligent misrepresentation occurs when a defendant, acting in the course of his

business, profession, or employment, or in a transaction in which he has pecuniary

interest, supplies faulty information meant to guide another in their business transactions;

the defendant fails to exercise reasonable care in obtaining or communicating

information; and the plaintiff justifiably relies upon the information provided by the

defendant.  *Strange v. Peterson,* No. W1999-00489-COA-R3-CV, 2001 WL 29461, at *2

(Tenn. Ct. App. Jan.11, 2001) (citing *Robinson v. Omer,* 952 S.W.2d 423 (Tenn. 1997)).

While the Hospital correctly notes that the principle of integration means that all

prior statements or negotiations are merged into a written contract intended to be a

16

complete expression of the parties' agreement, this rule does not apply to cases involving fraud or mistake. *Lowe*, 1991 WL 220576, at *5. Similarly, parol evidence cannot be used to vary the terms of a written contract, but neither the parol evidence rule nor the statute of frauds prevents the use of parol evidence to prove fraudulent inducement to enter into a contract. *Id*. at *6.

Assuming the allegations of the amended counterclaim are true, as the Court must in considering a motion to dismiss, Dr. Mosley has alleged that the Hospital knowingly provided him with inaccurate or false information concerning the financial prospects for an orthopedic practice in Shelbyville, a false statement of past fact that is material to the parties' agreement, in order to induce him to enter into the Recruitment Agreement. Dr. Mosley relied on those representations in entering into the Recruitment Agreement and incurred significant expense in relocating and opening his practice in Shelbyville. Dr. Mosley claims that he generated lower income than he anticipated and reached the cap amount of his income guarantee earlier than he anticipated. Although he does claim that he was forced to treat Clinic patients for whom he could not bill his services, the damage alleged is that he made less money than he anticipated based on the earlier representations. While the Hospital contends that the alleged misrepresentations cannot be the proximate cause of Dr. Mosley's claimed damages, the Court finds that it cannot make such a determination at this time. Dr. Mosley has plausibly alleged damages resulting from the Hospital's misrepresentations; whether or not he can prove such a causal connection can only be determined upon development of the record.

Accordingly, the Hospital's motion to dismiss the claims of fraudulent inducement and negligent misrepresentation will be denied and these claims will remain pending.

## VI. Dr. Mosley's Claim for Quantum Meruit/Unjust Enrichment (Count 5)

The Hospital argues that Dr. Mosley's claim for quantum meruit/unjust enrichment fails because he has failed to plead that he conferred a benefit upon the Hospital as a result of treating the Clinic's patients without compensation, because he has not pled an allegation which would permit the Court to disregard the corporate form of the three separate entities, and because he cannot state a claim for unjust enrichment where a contract exists covering the same subject matter [Doc. 33 at pp. 18—24].

Dr. Mosley responds that he has alleged a claim for unjust enrichment because Hospital agents placed a competing orthopedic surgeon in his office space, and later, a Hospital employee used Dr. Mosley's office space to register patients for diagnostic testing performed in a separate office suite. Thus, the Hospital used his office space without any payment to him and received a benefit from him. Dr. Mosley further contends that there is no contract between him and the Hospital regarding use of his office space by Hospital employees. Dr. Mosley also responds that he is not seeking to pierce the corporate veil between the Hospital, the Clinic, and their parent corporation, but is simply trying to explain how these entities benefitted from his services. Finally, Dr. Mosley believes that he is required to pursue any claims against the Hospital pursuant to Fed. R. Civ. P. 13(a) and may not wait for the resolution of a pending case against the Clinic [Doc. 34 at pp. 22—26].

In reply, the Hospital argues that Dr. Mosley cannot impute to the Hospital a benefit he allegedly conferred on the Clinic, that is, the treatment of Clinic patients without compensation. The Hospital also notes that the lease agreement between Dr. Mosley and the Clinic for the quiet use and enjoyment of his office space controls that issue and provides any remedy he may have. Further, the Hospital argues that Rule 13 does not apply to claims Dr. Mosley may have against the Clinic, as those are the subject of another pending action. Finally, the Hospital notes that a parent corporation cannot conspire with a subsidiary [Doc. 35 at pp. 15—16].

A quantum meruit, or unjust enrichment, action is an equitable substitute for a contract claim by which a party may recover the reasonable value of goods and services provided to another if the following are shown: (1) there is no existing, enforceable contract between the parties covering the same subject matter; (2) the party seeking recovery proves that it provided valuable goods or services; (3) the party to be charged received the goods or services; (4) the circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) the circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197-98 (Tenn. 2001).

The amended counterclaim alleges that the Hospital and its parent corporation benefitted from Dr. Mosley's treatment of Clinic patients without compensation [Doc. 31 at ¶ 44—46]. Even if true, this allegation does not demonstrate a benefit *to the Hospital*. If Dr. Mosley treated Clinic patients without compensation, that benefit inured to the

19

Clinic. As the Hospital argues, the Court cannot ignore the corporate form of these entities even if they have similar corporate names, locations, and common officers and directors. *Continental Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 631 (Tenn. 1979). Dr. Mosley's concession that he "is not currently seeking to pierce the corporate veil" eliminates further deliberation of this issue.

The amended counterclaim also alleges that the Hospital benefitted by using Dr. Mosley's office space to operate a competing medical practice and to register Hospital patients for diagnostic procedures [Doc. 31 at ¶¶ 12, 47]. However, the amended counterclaim also acknowledges that the office space was leased through the Clinic [*Id*. at ¶¶ 9, 30]. Thus, any claim related to the use of the office space is governed by the lease agreement with the Clinic and cannot be the subject of a claim for unjust enrichment against the Hospital. *See Doe*, 46 S.W.3d at 197-98. Dr. Mosley must pursue any claim over the use of his office space against the Clinic. Accordingly, Dr. Mosley has failed to state a plausible claim for unjust enrichment against the Hospital and this claim must be dismissed.

## VII.    Conclusion

For the reasons set forth herein, the defendant's motion to dismiss [Doc. 32] will be **GRANTED in part** and **DENIED in part**, whereby Dr. Mosley's counterclaims of breach of contract, intentional interference with a business relationship, and unjust enrichment will be **DISMISSED** and the claims of fraudulent inducement and negligent misrepresentation will remain pending.

An appropriate order will be entered.

                    s/ Thomas W. Phillips
                  SENIOR UNITED STATES DISTRICT JUDGE