UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| SHELBYVILLE HOSPITAL CORPORATION, d/b/a HERITAGE MEDICAL CENTER, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:13-CV-88 ) |
| E. WAYNE MOSLEY, M.D., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Reconsideration [doc. 222], Plaintiff's Response in Opposition [223], and Defendant's Reply [doc. 224]. For the reasons herein, the Court will deny the motion.

### I. BACKGROUND

On February 10, 2016, this Court entered summary judgment against Defendant E. Wayne Mosley, M.D. ("Dr. Mosley") after finding that he breached his Recruitment Agreement [doc. 1-1] with Plaintiff Shelbyville Hospital Corp. ("Shelbyville Hospital"). [Memo. Op., doc. 173, at 1–31]. Specifically, the Court determined that Dr. Mosley—while he participated in a mission trip in Africa and remained absent from his medical practice in Shelbyville, Tennessee, from November 12, 2012 to at least December 17, 2012—breached the portion of the Recruitment Agreement that required him to engage in

the full-time practice of medicine in Shelbyville. [*Id.*].[1] As to the issue of damages, however, the Court reserved ruling and informed the parties that at a later date it intended to hold an evidentiary hearing. [*Id.* at 30–31]. Since then, each of the parties has fully briefed the issue of damages, and Dr. Mosley has requested the opportunity "to put on proof" at the hearing to show that after the breach he returned to his practice and is therefore entitled to receive a setoff, or a reduction, in the amount of damages "based upon partial continued performance." [Def.'s Resp. to Mot. for Damages, doc. 180, at 2–3, 7]. The Court went on to schedule the hearing for May 24, 2017. [Order Scheduling Hr'g, doc. 193, at 1].

With about two weeks to spare before the hearing, Dr. Mosley elected to obtain new counsel, who moved for reconsideration of the Court's entry of summary judgment, [*see* Def.'s First Mot. for Reconsideration, doc. 213, at 1–4], and for empanelment of a jury to determine damages at the hearing, [*see* Def.'s Mot. for Pretrial Conference, doc. 214, at 1–2]. The Court denied Dr. Mosley's request for reconsideration as to the issue of liability, and it explained to the parties that no jury was necessary at the evidentiary hearing because Dr. Mosley has argued all along that his request for a setoff is equitable in nature. [Order Denying Reconsideration, doc. 218, at 1]. In response, Dr. Mosley again moved for reconsideration under Federal Rule of Civil Procedure 54(b), re-contesting the

---

[1] The Recruitment Agreement defines the term "Full-Time Private Practice of Medicine" as "a minimum of forty (40) hours per week of direct patient contact house and patient care activities relating to the establishment of the practice of Physician's Specialty in the Community." [Recruitment Agreement ¶ B.1]. In addition, the Recruitment Agreement defines a contractual breach as the "Physician['s] fail[ure] to render services pursuant to this Agreement for a period of ten (10) consecutive business days during the Cash Collections Guarantee Period without Hospital and Physician's mutual agreement." [*Id.* ¶ B.4].

issue of liability and the Court's decision not to empanel a jury for today's hearing on damages. [*See* Def.'s Renewed Mot. for Reconsideration, doc. 222, at 1–8]. The Court now will address Dr. Mosley's motion.

## II. LEGAL STANDARD

Under Rule 54(b), "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). In short, Rule 54(b) authorizes courts to reconsider interlocutory orders before an entry of final judgment. A movant, to justify reconsideration under Rule 54(b), must show "(1) an intervening change of controlling law; (2) new evidence [is] available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "A motion under Rule 54(b), however, may not 'serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought.'" *Madden v. City of Chattanooga*, No. 108-cv-160, 2010 WL 670107, at *2 (E.D. Tenn. Feb. 19, 2010) (quotation omitted). When considering a motion under Rule 54(b), a district court "must . . . temper[]" its ability to reconsider prior rulings with "the sound public policy litigation be decided and then put to an end." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, (6th Cir. 2013) (Gwin, J., concurring) (quotation omitted).

## III. Analysis

First, Dr. Mosley contends that the Court should reconsider its nearly sixteen-month-old holding that Dr. Mosley is liable for breach of the Recruitment Agreement because evidence in the record shows that he arranged for his colleagues—fellow physicians—to cover his patients in his absence. [Def.'s Renewed Mot. for Reconsideration at 2–7]. To support this argument, he directs the Court to Paragraph B.1 in the Recruitment Agreement, which he believes permitted him to assign his contractual requirements to other physicians while he was away from Shelbyville, without incurring risk of liability for breach: "Any *locum tenens* coverage needed to meet the Full-Time Private Practice of Medicine in the Community requirements of the Agreement shall be at the expense of the Physician." [Recruitment Agreement ¶ B.1]. Second, Dr. Mosley maintains that in a suit for breach of contract, damages is matter for the jury, even if it involves exclusively equitable issues. He claims that if the Court were to conduct the hearing without empanelling a jury, it would encroach on his Seventh Amendment right to have a jury deliberate on the existence and amount of any damages.

Against the backdrop of these arguments, the Court would be remiss if it did not recognize that Dr. Mosley appears to take issue with how the Court denied his original motion for reconsideration. In denying this motion—in which Dr. Mosley contended that the Court, on summary judgment, "erroneously overlooked" the "express contractual language" in Paragraph B.1, [Def.'s First. Mot. for Reconsideration at 2]—the Court relied on the deposition testimonies of other physicians who served as Dr. Mosley's professional colleagues, [*see* Order Denying Reconsideration at 1]. Shelbyville Hospital

4

presented these depositions to the Court in response to Dr. Mosley's request for reconsideration, to show that none of Dr. Mosley's colleagues ever agreed to cover his patients while he was in Africa. [*See* Pl.'s Resp. to First Mot. for Reconsideration, doc. 215, at 3–6]. Dr. Mosley now finds fault with the Court because, in denying his first motion for reconsideration, it relied on this "new evidence," which Shelbyville Hospital had "not previously urged [sic] by Plaintiff in support of the summary judgment motion itself." [Def.'s Renewed Mot. Reconsideration at 1]. Based on this "new evidence," he maintains that the Court should have allowed him the "opportunity to rebut by filing a reply brief" before denying his initial motion for reconsideration. [*Id.*].

### A. Local Rule 7.1

Under this district's local rules, "reply briefs are not necessary and are not required by the Court," unless "otherwise stated by the Court." E.D. Tenn. L.R. 7.1(c). A party's right to file a reply brief is therefore entirely in the Court's discretion. *See Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (noting that a district court's local rules have "the force of law" (quotation omitted)). The Court elected not to invite Dr. Mosley to file a reply brief because, simply, it did not require one. The Court has presided over this case for over three years and is intimately familiar with its issues, its history, and the parties. Partly from the deposition testimonies that Shelbyville Hospital filed with its response, the Court could plainly see that Dr. Mosley's argument under Paragraph B.1 is newly conceived—one that, as the non-movant on summary judgment, he had never raised as a source of material factual dispute—and is therefore untenable Rule 54(b)'s legal standard. *See Madden*, 2010 WL 670107 at *2 (recognizing that a motion for

reconsideration under Rule 54(b) does not permit parties to "tender new legal theories for the first time" (quotation omitted)); *see United States v. Barnes*, No. 3:08-cv-996-J-34MCR, 2012 WL 3194419, at *3 (M.D. Fla. June 5, 2012) ("[The defendant] fails to identify any manifest error of law or fact in the Court's Order or present a need to correct manifest injustice. Instead, in the Motion, [the defendant's] new counsel simply raises three arguments that [the defendant] did not present in her summary judgment briefing.").

In addition, Dr. Mosley improperly characterizes this evidence—the deposition testimony of his colleagues—as "new evidence," a phrase that he repeats throughout his renewed motion. [Def.'s Renewed Mot. for Reconsideration at 1–4]. In the context of a motion for reconsideration, "new evidence" means "the evidence must have been previously unavailable," or in other words, the evidence must "not . . . exist prior to the district court's . . . . order." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *see Honaker v. Innova, Inc.*, No. 1:04-CV-132(M), 2007 WL 1832137 at *1 (W.D. Ky. June 26, 2007) (determining that no new evidence warranted change on reconsideration because the "evidence that [the plaintiff] considers 'new' was available months prior to the entry of . . . judgment"). By this definition, the deposition testimonies that the Court relied on to deny Dr. Mosley's original motion for reconsideration were not new evidence because they were taken before the Court entered summary judgment in February 2016. [*See* Dr. Mosley Dep., doc. 215-1, at 1; Dortch Dep., doc. 215-2, at 1; Dr. Hazel Dep., doc. 215-3, at 1; Dr. Ramprasad Dep., doc. 215-4, at 1]. The Court will therefore reject Dr. Mosley's renewed argument for reconsideration.

### B. The Locum Tenens Provision in Paragraph B.1

As the Court already pointed out, Dr. Mosley's argument under Paragraph B.1 is a new argument and on that basis alone fails under Rule 54(b). In fact, although Dr. Mosley labels his motion as one for reconsideration under Rule 54(b), he raises his arguments under the legal standard that governs summary judgment, contending several times over that Shelbyville Hospital "still offers no actual evidence to suggest that Dr. Mosley failed to perform." [Def.'s Renewed Mot. for Reconsideration at 5]. That legal standard is not the legal standard now, not at this stage. Again, Dr. Mosley, as the movant for reconsideration, has the onus to show "(1) an intervening change of controlling law; (2) new evidence [is] available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. Dr. Mosley, however, does not identify any of these elements, let alone make a specific argument under any one of them, and as far as the Court can tell, the only remotely conceivable argument available to him is a need to prevent manifest injustice. Several courts interpret the phrase "manifest injustice" to mean an error that is "direct, obvious, and observable . . . . apparent to the point of being indisputable." *Block v. Meharry Med. Coll.*, No. 3:15-cv-00204, 2017 WL 1364717, at *1 (M.D. Tenn. Apr. 14, 2017) (quotation omitted); *cf. United States v. Jarnigan*, No. 3:08-CR-7, 2008 WL 2944902, at *2 (E.D. Tenn. June 25, 2008).

Even when the Court views Dr. Mosley's argument as a plea for correction of manifest injustice, it cannot identify any error that is so apparent as to be beyond any point of dispute. To argue otherwise, Dr. Mosley refers the Court to his own deposition

testimony, in which he states that he had arranged for Dr. Mark Hazel to cover his patients:

> Q: Are you still contending that you had an arrangement with Dr. Hazel?
>
> A: Yes.

[Dr. Mosley Dep., doc. 222-1, 87:14–15]. Dr. Mosley argues that based on this testimony, he has a right to have a jury weigh whether he satisfied the provision for locum tenens coverage under Paragraph B.1. [Def.'s Renewed Mot. for Reconsideration at 5–6]. Dr. Mosley, however, identifies no testimony in which he arranged for Dr. Hazel to cover for him during the timeframe at issue—*while* he was away in Africa. Indeed, in the same line of questioning, Dr. Mosley is unable to say definitively whether he informed Dr. Hazel that he was leaving for Africa at all:

> Q: And you told him you were going to Africa?
>
> A: I think I may have told him—I may have told him I was going to Syria at that point.

[Dr. Mosley Dep at 87:10–14]. This testimony is dubious and equivocal, and while it may be sufficient to create *some* doubt as to whether Dr. Hazel was aware of Dr. Mosley's trip to Africa, evidence that merely raises some doubt is not sufficient to surmount a non-movant's burden on summary judgment—let alone to show an error that is so apparent as to be beyond dispute. *See, e.g.*, *Dose v. Equitable Life Assurance Soc'y*, 864 F. Supp. 682, 684 (E.D. Mich. 1994) ("[A] nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." (citation omitted)).

The same shortcoming undercuts Dr. Mosley's argument that the evidence shows he arranged for Dr. Mittur Ramprasad to cover his patients. Again, Dr. Mosley refers to his own testimony, in which he states that he "hired Dr. Ramprasad to cover call" for him, but this testimony does nothing to show that Dr. Ramprasad knew of Dr. Mosley's travels to Africa, let alone covered his patients *during* that specific time. Dr. Mosley needs to cite evidence establishing that he arranged for coverage, in some shape or form, that happened during the time of the breach and for an average of forty hours a week. He has not. While the evidence indicates that he and his colleagues had general agreements regarding patient coverage in place, perhaps as a professional courtesy from one physician to another, the evidence of these agreements shows—at most—only that they had agreed to cover his patients here and there, on an intermittent basis, not for a prolonged absence of twenty-four business days. Dr. Mosley cites no evidence illustrating that anyone agreed to cover his patients or in fact did cover his patients while he was in Africa for this duration.

The Court takes this position without looking past the letter that Dr. Mosley refers to in the record—a letter that he wrote to Shelbyville Hospital's executives just before his trip to Africa and that contains his assurances that he arranged proper coverage for his patients with Dr. Hazel:

> I will be departing for Port Harcourt, Nigeria. There, I will fill an emergent need for an orthopaedic surgeon inside a "Doctors Without Borders" Hospital.
>
> . . . .

> Proper disposition has been made on all my current patients. I have arranged with Mark Hazel, M.D., with the Murfreesboro Medical Clinic to cover my patients during this absence.

[Dr. Mosley Letter, doc. 151-13, at 2]. This piece of evidence, by Dr. Mosley's own hand, equates to little more than a self-serving affidavit in light of the record evidence that counters it. *See Hoffner v. Bradshaw*, 622 F.3d 487, 500 (6th Cir. 2010) (recognizing that, on summary judgment, a "self-serving affidavit carries little weight, especially in light of the copious evidence in the record to contradict it"). Dr. Mosley himself testified that he never arranged for any of his colleagues to take care of his patients *while* he was in Africa:

> Q: Did you have locums coverage for your practice while you were in Africa?
>
> A: No. I did not hire locums coverage.

[Dr. Mosley Dep. at 83:11–22]. Running against this testimony, Dr. Mosley cannot invoke the letter's contents to avoid summary judgment—and he certainly cannot claim that an indisputable error has occurred. *See United States ex rel Compton v. Midwest Specialties*, 142 F.3d 296, 303 (6th Cir.1998) ("[A] party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony." (citations omitted)). The contents of Dr. Mosley's letter also contradict the testimony of Dr. Hazel—the very person who Dr. Mosley claims was to cover his patients while he was in Africa:

> Q: So did you have any sort of arrangement to see Dr. Mosley's patients or to cover Dr. Mosley's practice *while he was in Africa* or overseas?
>
> A: I did not.

> . . . .
>
> Q: Now, did Dr. Mosley contract you to tell you he was going overseas?
>
> A: Well, he did mention that he was going, but I honestly didn't know when he was going. And, actually, I don't even know when he went or got back.
>
> Q: So did he ask you if you would be available to see patients while he was gone?
>
> A: I honestly don't remember that, and I would have to say no.

[Dr. Hazel Dep., doc. 215-3, 12:4–7, 13:–20 (emphasis added)]. Again, Dr. Mosley's newfound arguments here on reconsideration, as well as the evidence that he cites to buttress them, fall well short of evincing an indisputable error and bringing him within reach of any remedy under Rule 54(b). The Court will therefore reject Dr. Mosley's renewed argument for reconsideration.

### C. The Need for a Jury

Finally, Dr. Mosley's concerns regarding his Seventh Amendment rights require the Court, again, to clarify the purpose of today's evidentiary hearing. During the hearing, the Court's intention is *not* to determine the extent of the damages—and it will not do so. Shelbyville Hospital moved for summary judgment on the issue of damages, insisting it is entitled to $1,013,000 in damages based on the Recruitment Agreement's plain language. The Court has not ruled on whether the record contains a genuine issue of material fact as to Shelbyville Hospital's right to this amount. Simply, the Court was then, and is now, unable to do so because Dr. Mosley's affirmative defense of a setoff remains pending. [*See* Am. Answer, doc. 21, ¶ 39; Countercl., doc. 22, ¶ 36]. Dr. Mosley

previously requested an opportunity to present evidence of his entitlement to a setoff under Tennessee law—whether on a legal basis, an equitable basis, or otherwise. The purpose of the hearing is to give Dr. Mosley an opportunity to raise a genuine issue of material fact as to this affirmative defense's validity. If he succeeds in this task, *then* he will be entitled to have a jury determine the extent of that setoff at a later date.

## IV. CONCLUSION

Dr. Mosley fails to meet his burden under Rule 54(b), and his Renewed Motion for Reconsideration [doc. 222] is therefore **DENIED**. The Court will enter an order consistent with this opinion.

**IT IS SO ORDERED.**

ENTER:


s/ Thomas W. Phillips
United States District Judge