UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| SHELBYVILLE HOSPITAL CORPORATION, d/b/a HERITAGE MEDICAL CENTER, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 4:13-CV-88 |
| E. WAYNE MOSLEY, M.D., ) ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Motion for Reconsideration [doc. 235], Plaintiff's Motion for Oral Argument [doc. 236], Defendant's Response [doc. 238], and Plaintiff's Reply [doc. 239]. For the reasons herein, the Court will deny the motions.

### I. BACKGROUND

In August 2011, Shelbyville Hospital Corporation and E. Wayne Mosley, M.D. ("Dr. Mosley") entered into a Recruitment Agreement [doc. 1-1], under which Dr. Mosley, with financial incentives from Shelbyville Hospital, agreed to establish a medical practice in Shelbyville, Tennessee, for thirty-six months. [*Id.* at 1–2]. The parties agreed that this thirty-six-month period would proceed in two phases: (1) the Cash Collections Guarantee Period, which would comprise the first eighteen-months of the

Recruitment Agreement,[1] and (2) the Cash Collections Continuation Period, which would comprise the second eighteen months of the Recruitment Agreement.[2] [*Id.* at 1, 3, 12]. During the first eighteen months—the Cash Collections Guarantee Period—Shelbyville Hospital guaranteed Dr. Mosley's practice would earn at least $84,416.66 every month. [*Id.* at 1, 10]. If Dr. Mosley's practice failed to realize $84,416.66 in any month, Shelbyville Hospital would make up the difference by providing Dr. Mosley with "Guarantee Payment[s]," but those payments could not exceed $1,013,000 in the aggregate. [*Id.*].

During the second eighteen months—the Cash Collections Continuation Period—Shelbyville Hospital would forgive one eighteenth of the total Guarantee Payments for each month that Dr. Mosley maintained the "Full-Time Private Practice of Medicine." [*Id.* ¶ D.7]. The parties agreed to these terms of forgiveness in paragraph D.7:

> During the Cash Collections Continuation Period, which shall begin on the day following the last day of the Cash Collections Guarantee Period and continue for the number of months set forth as the Continuation Period on the Cover Page, Hospital agrees that it will cancel (amortize) one eighteenth (1/18th) of the Total Cash Collection Guarantee Payments made by Hospital under this Agreement for each full month Physician remains in the Full-Time Private Practice of Medicine, in Physician's Specialty, in the Community. In the event Physician fails to maintain a Full-Time Private Practice of Medicine in the Community during the Cash Collections Continuation Period, Physician shall immediately reimburse to Hospital the unamortized amount of the Total Cash Collections Guarantee Payments paid hereunder.

---

[1] The Cash Collections Guarantee Period was to "begin on the Practice Commencement Date," [Recruitment Agreement at 3], which was August 15, 2011, [Mem. Op., doc. 173, at 4].
[2] The Cash Collections Continuation Period was to "begin on the day following the last day of the Cash Collections Guarantee Period," [Recruitment Agreement at 12], which was on or about February 15, 2013, [Mem. Op. at 13].

2

[*Id.*]. Paragraph B.1 of the Recruitment Agreement defines "Full-Time Private Practice of Medicine" as a "minimum average of forty (40) hours per week of direct patient contact hours and patient care activities directly relating to the establishment of the practice of Physician's Specialty in the Community."

The Recruitment Agreement also binds Dr. Mosley to various "Covenants of Physician," [*id.* ¶¶ B.1–B.18], one of which is the requirement that Dr. Mosley, under paragraph B.1, must maintain the Full-Time Private Practice of Medicine during the full thirty-six-month duration of the Recruitment Agreement: "Physician shall . . . during the Practice Commitment Period, engage in the 'Full-Time Private Practice of Medicine' (as defined herein) in the Community." [*Id.* ¶B.1].[3] In addition, paragraph B.4 requires Dr. Mosley to fulfill his contractual obligations "on a regular and continuous basis" during the first eighteen months specifically:

> Physician shall discharge obligations hereunder on a regular and continuous basis. . . . If Physician fails to render services pursuant to this Agreement for a period of ten (10) consecutive business days during the Cash Collections Guarantee Period without Hospital and Physician's mutual agreement, Physician shall have failed to carry out Physician's covenants herein on a regular and continuous basis.

[*Id.* ¶ B.4]. The parties also contemplate consequences for Dr. Mosley's failure to fulfill his contractual obligations. Under paragraph D.6, they agreed that Dr. Mosley would be liable for damages if he failed to maintain the Full-Time Private Practice of Medicine during the first eighteen months:

---

[3] Some of the other Covenants of Physician include the appropriate care and supervision of patients, participation in education programs, performance of administrative duties, adherence to policies, reasonable care for the indigent, and provision of services to Medicare and Medicaid beneficiaries. [Recruitment Agreement ¶ B.7].

> Should the Physician fail to maintain a Full-Time Private Practice of Medicine in the Community during the Cash Collections Guarantee Period, Physician shall immediately reimburse to Hospital the total sum of the Total Cash Collections Guarantee Payments and/or any other payments made by Hospital under this Agreement to Physician to date.

[*Id.* ¶ D.6].

During the thirty-six-month lifespan of the Recruitment Agreement, Shelbyville Hospital sued Dr. Mosley, alleging breach of contract after Dr. Mosley was absent from his practice for twenty-four consecutive business days while participating in an African mission trip in 2012. [Compl., doc. 1, at 8; Mem. Op., doc. 173, at 5, 13]. Shelbyville Hospital eventually moved for summary judgment on its claim, contending that Dr. Mosley, while in Africa, breached the Recruitment Agreement during the first eighteen months by violating paragraph B.4's "10-day limit." [Pl.'s Br., doc. 142, at 23]. As recompense, it requested $1,013,000 in Guarantee Payments under paragraph D.6, interest, and attorney's fees. [*Id.* at 24–25].

The Court concluded that Dr. Mosley breached paragraph B.4 because he "missed more than ten consecutive days of work in late 2012," and it awarded summary judgment to Shelbyville Hospital on the issue of liability only. [Mem. Op. at 30]. It did not make legal conclusions or factual findings concerning the issue of damages. Instead, it reserved ruling on damages and scheduled a hearing in which it intended to allow the parties to present evidence and make arguments. [*Id.* at 30–31]. It also ordered Shelbyville Hospital to submit proof of its damages. [*Id.*].

Leading up to the hearing, Dr. Mosley argued that he is entitled to a setoff or reduction in damages because, after he completed his mission trip in 2012, he returned to

4

the Full-Time Private Practice of Medicine in Shelbyville and "continued to treat his patients and perform surgeries as he had before." [Def.'s Resp., doc. 180, at 4]. He requested the opportunity "to put on proof" at the hearing to show that he returned to his practice and is therefore entitled to receive a setoff "based upon partial continued performance." [*Id.* at 2, 7, 15]. As to the exact amount of the setoff, Dr. Mosley proposed that "[a]ny amount of compensatory damages . . . should be reduced proportionally based upon the work [he] did provide under the contract." [*Id.* at 7].

The Court held the evidentiary hearing and heard evidence and arguments from the parties. After the hearing, the Court determined that Dr. Mosley was not entitled to pursue a setoff. The Court concluded that his request for a setoff was contractual in nature, invoked paragraph D.7, and did not satisfy paragraph's D.7 requirements. [Mem. Op. Denying Summ. J., doc. 233, at 28–30]. The Court rejected Shelbyville Hospital's request for summary judgment as well, determining that it did not meet its burden as the movant for damages under paragraph D.6. [*Id.* at 17–27]. Specifically, the Court ruled that Shelbyville Hospital failed to establish, beyond any genuine issue of material fact, that Dr. Mosley did not maintain the Full-Time Private Practice of Medicine during the initial eighteen months. [*Id.*]. Under Federal Rule of Civil Procedure 54(b), Shelbyville Hospital now moves for reconsideration of the Court's decision and for clarification of three additional issues.

## II. LEGAL STANDARD

Under Rule 54(b), "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b). In short, Rule 54(b) authorizes courts to reconsider interlocutory orders before an entry of final judgment. A movant, to justify reconsideration under Rule 54(b), must show "(1) an intervening change of controlling law; (2) new evidence [is] available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "A motion under Rule 54(b), however, may not 'serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought.'" *Madden v. City of Chattanooga*, No. 108-cv-160, 2010 WL 670107, at *2 (E.D. Tenn. Feb. 19, 2010) (quotation omitted). When considering a motion under Rule 54(b), a district court "must . . . temper[]" its ability to reconsider prior rulings with "the sound public policy litigation be decided and then put to an end." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, (6th Cir. 2013) (Gwin, J., concurring) (quotation omitted).

## III. ANALYSIS

The Court begins by reiterating a critical point from its Memorandum Opinion: Shelbyville Hospital moved for damages under paragraph D.6 and paragraph D.6 alone;[4]

---

[4] When Shelbyville Hospital moved for summary judgment in late 2015, it plainly stated that "*[u]nder Paragraph D.6*, th[e] entire amount became immediately due when Mosley

6

it never moved for damages under some of the broader provisions available to it in other paragraphs. [Mem. Op. Denying Summ. J. at 27].[5] Shelbyville Hospital had to vault two hurdles to dispatch its burden as the movant for damages under paragraph D.6's plain language. First, it had to establish the amount of the Guarantee Payments that it tendered to Dr. Mosley "to date" of the breach, and second, it had to show that he failed to maintain the Full-Time Private Practice of Medicine—that is, an average of forty hours per week, [Recruitment Agreement ¶ B.1]—during the first eighteen months:

> Should the Physician fail to maintain a Full-Time Private Practice of Medicine in the Community during the Cash Collections Guarantee Period, Physician shall immediately reimburse to Hospital the total sum of the Total Cash Collections Guarantee Payments and/or any other payments made by Hospital under this Agreement to Physician to date.

[Recruitment Agreement ¶ D.6].

### A. Reconsideration

Shelbyville Hospital, in moving for summary judgment, has already conceded that it raised no argument or evidence as to the second hurdle under paragraph D.6:

> On December 16, 2015, the Hospital moved for summary judgment on its breach of contract claim under Paragraphs B.4 and D.6 of the Recruitment Agreement. In its Complaint, the Hospital did plead that Mosley breached not only Paragraph B.4 but also Paragraph B.1, which required Mosley,

---

breached the Recruitment Agreement." [Pl.'s Br. at 24 (emphasis added)]. Later, after the hearing, it reiterated that it was moving for damages under paragraph D.6, [Pl.'s Post-Hearing Br., doc. 231, at 2, 7], and it also acknowledged that it had moved for damages under paragraph D.6 throughout the entirety of the summary judgment proceedings: "The Hospital briefed the applicability of D.6 in its original summary judgment papers and in the supplemental briefing [on damages]," [*id.* at 7–8 (internal citations omitted)].

[5] Paragraph E.2, for example, states that Shelbyville Hospital may "recover *any* payments" for "*[a]ny* material breach," though, to trigger this paragraph, its termination of the Recruitment Agreement appears to be necessary. [Recruitment Agreement ¶ E.2 (emphasis added)].

> among other things, to average 40 hours of direct patient contact every week for 36 months. *However, neither the Hospital nor Mosley moved for summary judgment on the issue of whether Mosley averaged 40-hours per week of direct patient contact under Paragraph B.1*.

[Pl.'s Post-Hearing Br., doc. 231, at 2 (emphasis added) (citations omitted)]. Shelbyville Hospital's arguments for reconsideration are therefore newly conceived arguments. Under Rule 54(b), the Court cannot consider these arguments and summarily rejects them. *Madden*, 2010 WL 670107 at *2.

Although the Court cannot consider these arguments because of the rigid standard that governs the case at this stage, it does not wish to be dismissive of Shelbyville Hospital's concerns either. The Court acknowledges that Shelbyville Hospital requests reconsideration partly because, in its view, the Court delved into "an issue of contract interpretation that Mosley did not raise in his papers." [Pl.'s Mot. Recons. at 3]. That issue of interpretation dealt with Shelbyville Hospital's obligation to show, under paragraph D.6, that Dr. Mosley failed to maintain a minimum average of forty hours per week. [Mem. Op. Denying Summ. J. at 17-27].[6]

This showing is—without question—part of paragraph D.6's plain language. So as the movant carrying the burden on summary judgment, Shelbyville Hospital had to make it, and the Court had to address it, irrespective of whether Dr. Mosley failed to broach it in his response to summary judgment. *See Sammons v. Baxter*, No. 1:06-cv-137, 2007 WL 325752, at *2 (E.D. Tenn. Jan. 31, 2007) ("[A party's failure to] oppos[e] . . . a summary judgment motion does not automatically result in the Court granting the

---

[6] Dr. Mosley did raise this issue at the hearing, and Shelbyville Hospital does not deny this fact. [Hr'g Tr., doc. 230, at 65:12–14; 66:16–22].

motion. Rather, pursuant to well-established precedent, in the context of a summary judgment motion, the Court must still examine the record and determine whether the movant has met its burden . . . . Thus . . . a party seeking summary judgment must meet its burden as movant regardless of whether the nonmovant files a response[.]" (citing *Stough v. Maryville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998); *Wilson v. City of Zanesville*, 954 F.2d 349, 351 (6th Cir. 1992); *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991))). Simply, Dr. Mosley's failure to advert to the precise requirements of paragraph D.6 in his papers does not entitle Shelbyville Hospital to a reprieve from its burden as to those requirements. The Court held Shelbyville Hospital to its burden.

**B. Clarification**

Shelbyville Hospital next requests three points of clarification: (1) clarification of the factual issues that remain now that the Court has ruled that Dr. Mosley is not entitled to a setoff under paragraph D.7; (2) clarification of an issue as to liability that, according to Shelbyville Hospital, the Court did not "definitively resolve" in its Memorandum Opinion from February 2016 [doc. 173]; and (3) clarification of the scope of the upcoming trial. [Pl.'s Mot. Recons. at 1–13].

1. *Paragraph D.7*

Shelbyville Hospital asks for clarification concerning the Court's interpretation of paragraph D.7, namely concerning whether Court's interpretation "resolves one of [its] remaining claims." [*Id.* at 2]. Under the Court's interpretation of paragraph D.7, any breach of the Recruitment Agreement precludes Dr. Mosley from claiming a setoff under

9

that paragraph. [Mem. Op. Denying Summ. J. at 28–31]. Because Dr. Mosley breached paragraph B.4, the Court ruled that he cannot rely on paragraph D.7 as a defense to damages. [*Id.*]. In light of the Court's conclusion that he is not entitled to forgiveness of the Guarantee Payments under paragraph D.7, Shelbyville Hospital now wonders why that conclusion does not also mean, by an extension of logic, that Dr. Mosley now has to repay everything—$1,013,000 in its entirety. [Pl.'s Mot. Recons. at 2, 7–10].

Dr. Mosley's failure to establish his right to depend on paragraph D.7 as a defense to damages does not mean that Shelbyville Hospital, by that same failure, has staked a prima facie right to recover damages. This is so because "an affirmative defense raises matters *extraneous* to the plaintiff's *prima facie* case." *Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986) (emphasis added) (citation omitted); *see Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) ("An affirmative defense is defined as '[a] defendant's assertion raising *new facts and arguments* that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true.'" (emphasis added) (quotation omitted)). After all, Dr. Mosley—not Shelbyville Hospital—invoked paragraph D.7 and relied on it for relief, [*see* Pl.'s Post-Hearing Br. at 8 (recognizing that Dr. Mosley "focus[ed] . . . on . . . setoff" at summary judgment)],[7] making it a matter that was not dispositive of Shelbyville Hospital's own claim.

---

[7] In 2015, when Shelbyville Hospital moved for summary judgment, it did mention paragraph D.7 to characterize the Guarantee Payments as "basically a loan," but again, it moved to recover the Guarantee Payments under paragraph D.6 rather than paragraph D.7 or any other paragraph: "*Under Paragraph D.6*, that entire amount became immediately due when Mosley breached the Recruitment Agreement." [Pl.'s Br. at 5, 24 (emphasis added)].

10

The Court, of course, does not in any way suggest that the element of damages itself is extraneous to Shelbyville Hospital's prima facie case for breach of contract. *See ARC LifeMed, Inc. v. AMC-Tennessee*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (referring to damages as an "essential element[]" of "any breach of contract claim" (quotation omitted)). Rather, the Court's point is that Shelbyville Hospital, in arguing in support of its prima facie case on summary judgment, never expressly moved to recover damages under paragraph D.7—or for that matter, paragraph D.8, E.2, or any other paragraph in the Recruitment Agreement except paragraph D.6. In failing to invoke paragraph D.7 as a prima facie basis for damages,[8] it left the Court with only one issue to address under that paragraph: Dr. Mosley's right to rely on it as an affirmative defense. The Court addressed that issue. And again, it is a type of issue that courts treat as "extraneous to the plaintiff's prima facie case." *Ford Motor*, 795 F.2d at 546 (citation omitted).[9]

Shelbyville Hospital now bemoans the trial as a needless endeavor and a waste of the Court's and the parties' resources. [Pl.'s Reply at 5 n.2, 6]. As the master of its claim,

---

[8] Without expressing an opinion as to Shelbyville Hospital's right to recover damages under paragraph D.7, the Court notes that this paragraph states: "*In the event Physician fails to maintain a Full-Time Private Practice of Medicine in the Community during the Cash Collections Continuation Period*, Physician shall immediately reimburse to Hospital the unamortized amount of the Total Cash Collections Guarantee Payments paid hereunder." (emphasis added).

[9] Shelbyville Hospital also points out that the Court, in 2016, characterized the Guarantee Payments as a loan, and it argues that the Court departed from this characterization in its latest ruling. [Pl.'s Reply at 1–5]. Nothing in the Court's most recent ruling, however, changes its previous description of the Guarantee Payments as a loan. The Court simply addressed whether the record evidence supported Shelbyville Hospital's argument that Dr. Mosley had to repay the loan *under paragraph D.6*—the very provision under which Shelbyville Hospital moved for the repayment of the loan. Shelbyville Hospital, by its own admission, did not meet its burden under paragraph D.6. [Pl.'s Post-Hearing Br. at 2].

it must answer for that perception of the trial, not the Court. *See Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, 833 F.3d 680, 688 (6th Cir. 2016) ("As the master of the complaint, the plaintiff may decide what claims to bring and how to prove them. But it cannot avoid responsibility for dealing with each aspect of the claim at each phase of the case."). Shelbyville Hospital moved for damages under paragraph D.6—at the exclusion of seemingly broader provisions in the Recruitment Agreement that might have resolved this case at the summary judgment stage—and without any doubt, it failed to make the necessary showing for summary judgment under that paragraph. Its request now for clarification is not the proper mechanism by which the Court may disturb its previous decision. And it is not the proper mechanism by which the Court may consider newly minted arguments as to Shelbyville Hospital's right to recover damages under paragraphs D.7, D.8, E.2, or any other paragraph—even if those arguments may be logical offshoots of the Court's reasoning as to previously decided issues.

Still, Shelbyville Hospital rightly points out that the Court "in its discretion," may permit it to refile for summary judgment "if good reasons exist," particularly if "it is in the interest of judicial economy." [Pl.'s Reply at 6 n.2 (quotations omitted)]. It now requests permission to refile for summary judgment on these grounds. [*Id.*]. But this case has endured for over four years and is now approaching its fifth year. The Court has a responsibility not only to operate in the interest of judicial economy but also in the interest of judicial *expediency*. *See* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and

proceeding"). The Court cannot realistically accept the view that a fresh batch of motions under Federal Rule of Civil Procedure 56 will move this case toward a "just, speedy, and inexpensive" resolution on the merits. Fed. R. Civ. P. 1. Besides, Shelbyville Hospital now concedes that the issues in this case already "have been fully (and repeatedly) briefed." [Pl.'s Reply at 5 n.2].

The Court has poured countless hours into this case, which has taxed the Court's resources. Because of the Court's case load, another round of summary judgment motions is likely to take months for the Court to resolve. And that timeframe will only increase if the parties also spring other motions on the Court. Along the way, maybe there will be motions to reopen discovery, which the Court has dealt with to date. Maybe there will be new requests for an evidentiary hearing, or multiple hearings. The Court has encountered those too. Maybe there will be motions for sanctions. The Court has adjudicated more than one of those. Maybe there will be motions to amend the pleadings or to assert untimely defenses. The Court has also grappled with those. Maybe Dr. Mosley will have to deploy overseas in service of his country. The Court has faced that issue too. Or maybe, for the third time, Dr. Mosley will decide that he wants new counsel. Yes, that request is not unfamiliar to the Court either. Simply, none of this is beyond the realm of imagination based on this case's tortured history. In fact, the Court would even venture at this point to call it likely.

The upcoming trial is now the most pragmatic hope for an expeditious resolution to this litigation. Any alternative to trying this case will likely continue to sap the Court's resources, cause witnesses' memories to fade, and possibly undermine public confidence

13

in the judiciary. The Court might have been more sympathetic to Shelbyville Hospital's request to reopen summary judgment under different circumstances, but it is unable to look past the fact that Shelbyville Hospital *itself* drafted the Recruitment Agreement. It is intimately familiar with its terms. And it has had the same counsel throughout this litigation, from day one. It simply had no excuse not to pursue summary judgment under the Recruitment Agreement's other damages provisions, and even now, as it swiftly raises these very provisions in support of its request for clarification and reconsideration, it does not offer a reason why it did not raise them in the first place. The Court, under these circumstances, cannot identify any semblance of good cause for a successive motion for summary judgment.

2. *The Court's Memorandum Opinion from February 2016*

Shelbyville Hospital also asks for clarification "on an additional claim that is related to Paragraph D.7, but the Court's Orders do not expressly resolve." [Pl.'s Mot. Recons. at 10]. Specifically, it notes that when it moved for summary judgment on the issue of liability in 2015, it argued that Dr. Mosley breached the Recruitment Agreement during the second eighteen months too. [*Id.*]. It notes that the Court never addressed this issue in its Memorandum Opinion from 2016, and it would like to know the Court's position on this issue now, [*Id.* at 10–13]. As part of its request, Shelbyville Hospital ultimately urges the Court to "amend the February 2016 Order" and "enter judgment for the entire $1,013,000 plus interest and fees." [*Id.* at 13].

Shelbyville Hospital's request is clearly not a request for clarification. The Court must interpret Shelbyville Hospital's request to "amend" its ruling from 2016 as one for reconsideration, not clarification. *See* Fed. R. Civ. P 59(e) (permitting courts to "amend" their judgments); *see also* Fed R. Civ. P. 54(b) (permitting courts to "revise[]" their judgments). Because Shelbyville Hospital does not identify its request for what it really is—a request to amend a judgment upon reconsideration—and neither cites nor argues under the applicable legal standard, the Court must reject it. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)).

    3. *The Scope of the Trial*

Shelbyville Hospital, lastly, requests clarification of the scope of the upcoming trial, noting that it "pleaded other breaches and theories of liability" that it did not raise at the summary judgment stage and "[t]hese breaches and theories are separate bases for repayment of the $1,013,000." [Pl.'s Mot. Recons. at 1–2].[10] The question of whether these theories of liability will be issues for the jury's resolution at trial is frankly, at this point, up to Shelbyville Hospital, which, again, is the master of its complaint. *See Gregory v. Shelby Cty.*, 220 F.3d 433, 442–43 (6th Cir. 2000) ("[A] party's failure to advance a theory of recovery in a pretrial statement constitutes waiver of that theory."

---

[10] Shelbyville Hospital clearly alleges other grounds for liability. For instance, it pleads that Dr. Mosley "breach[ed] the Agreement" not only during the first eighteen months but also the second eighteen months, "from at least February 2013 forward." [Compl. ¶ 26].

15

(citation omitted)); *Permasteelisa CS Corp. v. Airolite Co.*, No. 2:06-cv-569, 2008 WL 2491747, at *3 (S.D. Ohio June 18, 2008) ("The purpose of a Final Pretrial Order is to conclusively fix the issues that remain to be litigated. Issues and theories of recovery not included in the Final Pretrial Order are generally deemed to be waived." (citations omitted)); *see also* [Amended Scheduling Order, doc. 72, at 4 (requiring the parties to file the final pretrial order at least thirty days before trial)].

### IV. CONCLUSION

Shelbyville Hospital fails to meet is burden as the movant for reconsideration under Rule 54(b). Shelbyville Hospital's Motion for Reconsideration [doc. 235] is therefore **DENIED**. Shelbyville Hospital's Motion for Oral Argument [doc. 236] is also **DENIED**.

    **IT IS SO ORDERED.**

ENTER:

s/ Thomas W. Phillips
United States District Judge